In the first case, Genoma Lab. Morning, Your Honors, and may it please the Court, I'm Josh Katz for the appellant, Genoma Lab USA, Inc. The first point that I'd like to start with is the issue of constructive fraudulent transfer. We believe the District Court erred. Could you perhaps start with our jurisdiction? Yes. Because I'm a little puzzled. Am I right that the District Court held that some of the claims in your complaint were, in fact, properly filed? That there was no defect in them? I don't know if I can characterize it that way. I think he found that there was no defect under Rule 12b-6 in terms of pleading a plausible claim. He did find, I think, it was defective that we didn't plead it in the other case. And on that basis, dismissed it without prejudice. That's a peculiar defect. It is. But at any rate, they were dismissed without prejudice. Correct. And not only without prejudice in the sense that maybe you could fix something, but that there was nothing to fix. It was just a question of shove them over to the other complaint. Right. It is a peculiar defect. In fact, I don't agree that it was a defect and that that was a correct thing for the District Court to do. But be that as it may, he did it. And the result of that is that we have a final judgment under 1294. I'm not sure. How is that different than what would have happened if the District Court had dismissed the claims that it dismissed on the merits and left the others standing and then consolidated the two cases? How is this different than that? I agree. If he had done that, there would be no appellate jurisdiction. The difference is he didn't do it. It may be as a practical matter the result is the same, but form matters. We have a final judgment. Aren't we elevating form over substance? I don't think so. I don't think the Court was elevating form over substance in the Cunard case by Judge Friendly, where it was even a worse case for appellate jurisdiction than it was here. They dismissed the exact same claim and just refiled it so that they could make a timely jury demand. And the Court held the dismissal without prejudice to refiling the case all over again in the exact same form was final under 1291. Why not, just going back to Judge Lynch's line of questions, why not just vacate the judgment and remand the case with instructions to the District Court to enter judgment that's consistent with its ruling from the bench? In other words, dismissing your claims against Osorio and Orego without prejudice to your refiling them in the other action. I don't understand. What the remand would be to essentially reverse the dismissal without prejudice so we have two actions pending? No, you would vacate the judgment and remand the case with instructions to the District Court to enter judgment consistent with its ruling from the bench that is dismissing your claims against Orego and Osorio without prejudice to your refiling them in the other action. Which the Court seems to have done in that footnote of the written order anyway. But without prejudice to us refiling the claims against Orego and Osorio? Yeah. And then we would litigate them or would there be another motion to dismiss? I guess I'm not understanding what the procedure would be. I think you're suggesting the claims that were dismissed were dismissed with prejudice. The claims that you're appealing here. Correct. Those were clearly dismissed with prejudice. And I acknowledge that you need it to be dismissed as to all claims and parties. So the issue is then whether the dismissal as to the other three without prejudice makes it not final as to those three, right? Well, if it's final, maybe it's final only to the extent that it was error to dismiss claims that satisfied the Rule 12b6 standard. And that the appropriate thing to do if a court wants to put it together with another case is fine. Just consolidate it with the other case. I'm just troubled by the idea that appellate jurisdiction can be manipulated to permit the appeal of a piece of a much larger litigation without any certification that the normal standards for saying there's no just reason to delay an appeal without making that and just sort of shifting things around. Perhaps on the district court's part, without even thinking about what the impact was on appellate jurisdiction, just doing a certain thing for convenience that is perhaps problematic. I don't understand the authority to dismiss a claim that states a claim for sort of administrative convenience purposes when there's a perfectly appropriate administrative convenience remedy if the judge thinks it's appropriate to consolidate two cases. Right. Well, I don't think there's any manipulation going on here. I certainly don't think Judge Daniels was trying to manipulate appellate jurisdiction. And none of the parties asked the court to do this. I understand. Which happens to – so there's no – And certainly you're not manipulating anything. You're here because you're here. Right. And the judge's order gives you an opportunity at least to argue that there's a final judgment. I do think this is a case where it's more efficient to hear the appeal now, and it probably would be appropriate under Rule 54 to do a certain thing. And why would that be? Why would the dismissal – this is not a rhetorical question or a cross-examination question. I'm just trying to figure it out. Why would it be useful to everybody to have claims against some parties, in this case, reviewed on appeal rather than waiting for final judgment when it's a kind of standard story that a party brings claims against five defendants and two of them get dismissed and the others go forward and you can't appeal until they're all done? Right. Well, because there would be duplicative litigation if we're right that our claims should be reinstated. Many of the issues overlap. In the fraudulent transfer claims against the remaining defendants, we have to prove insolvency. That's another issue we'd have to relitigate. And, in fact, the district court expressly said that he thought it was more efficient for them to be litigated together. That's sort of why he did this dismiss and refile ruling. All right. Well, I think I understand your position, and I've distracted you from where you wanted to begin. No, obviously, we need to address appellate jurisdiction. Yes, he could have consolidated them. Probably that's what he should have done under the Federal Rules of Procedure. But the fact that he didn't, I think, makes all the difference in the world under Cunard and the Simmons case that we cite. If you dismiss a claim without prejudice to refiling it in some other case, whether it's in the same court or state court or somewhere else, it's final under 1291. You say, and correct me if I'm misunderstanding, in the footnote 2 of your opening brief that you reserve the right to seek reinstatement of your claim against Osario, I believe. Is that correct? That is correct. How is that consistent with your position that the district court's judgment is a final appealable order? I think a party always has a right to try to come back and replete. Even if the entire case is just dismissed with prejudice, failure to state a claim, you can always make an application, say I have more facts, I have more things to allege. In fact, that's . . . so we're sort of taking the district court up on that statement where he said if you come back with more allegations. I don't know what allegations we need to come back with, but I just wanted to make clear we're not waiving or abandoning that claim or agreeing that the dismissal had merit on appeal. That's a bit peculiar too because if you have more things and you think that you could pursue an amended complaint, then the normal thing to do would be to file that. Then if the district court says no, that's still not good enough, then you've definitely got a final order. But if you take the other option of saying this is dismissed with prejudice and then it gets appealed here, and now if you win, you win. But if you lose, then I'm not sure how you get to say later, well, now I'll take advantage of my opportunity to amend. That would seem to be both terribly inefficient and to be precluded by a final judgment affirming a dismissal with prejudice of those claims. I think that's a fight we should have another day if and when we get to that point and we try to do it. I think even a dismissal that's affirmed, you can make a Rule 60 motion. You can always try to get back in. I don't think the fact that you have that possibility means the judgment is not final. With the Rule 60 motion, that's a different thing. But if you're saying, in effect, we could more or less as of right, as you said before, because any party can always seek to file an amended complaint after a dismissal, that would be something different. As a practical matter, I don't know how we can satisfy Judge Daniel's articulation of what we'd have to plead under veil-piercing and fraudulent transfer. And that's important because as a substantive matter, we think there's some fundamental errors with how he conceived these two claims. For veil-piercing, the district court was convinced that it was essentially akin to tortious interference. And we'd have to allege that these people personally caused Venus to breach the contract. We just don't read the case law that way. The case law seems to say over and over again that even if you never heard of the contract until after it was breached, once you find out there's a problem and your company has a big claim against it, and if you try to strip it of assets, that is sufficient to pierce the corporate veil. So we think that's just an error of law. The result will be the same whether you apply Florida or New York or anywhere else, as far as I know. On the fraudulent transfer issue, the only rationale that I can discern from the transcript for dismissing the constructive fraud claim was that we had to allege that the salary, and I use the word salaries in quotes because we don't think these are legitimate salaries, were different from what they were paying themselves beforehand. And again, that's not anywhere to be found in the statute of the case law. The statute simply says, is the company insolvent? Did it make a transfer? And was there reasonable consideration? Those are the only three things we have to check off, and I believe we do. Even if the salaries were always sort of no-show salaries, whatever the legality of that on its own feet, when the company is solvent, things change if the company becomes insolvent. Exactly. You can do that when your company is solvent. I'm not saying it's unusual or improper, but once you become insolvent, you can't do that anymore. And there's a great decision that Your Honor wrote in the TLC Merchants case, which I think is very similar factually. You had testimony by the principal that he was paying himself a salary, he couldn't articulate what exactly he did, and Your Honor held that it was a question of fact as to whether there was adequate consideration. So that . . . If we, just to be clear, let's say that we, for the sake of argument, we agree that there was appellate jurisdiction given, you know, because the district court dismissed the claims and closed the case. I'm still not sure why not simply vacate the judgment and remand the case with instructions to consolidate the cases? I would ask, if you do vacate the judgment, to give instructions to the district court that the claims against Arago and Osorio were, in fact, adequately planned, assuming you agree with our arguments on the merits. Because otherwise, I don't see that as efficient. If the idea is just to remand the case so that the court no longer has appellate jurisdiction, I don't know that the court can do that, because I think that, in one sense, would be manipulating appellate jurisdiction, right? And the Supreme Court has said time and again that the court, if you have appellate jurisdiction, you have to exercise it, whether there's no discretion not to. So if that is the idea, I would like to see some direction to the district court that, yes, the constructive fraudulent transfer claim satisfies Rule 8 as plausible, and yes, the actual fraudulent transfer claim does, assuming, of course, you agree with me on the merits, and the same for the veil-piercing claim. That would be my preference, Your Honors. Could you say a bit about the in-personam jurisdiction issue with respect to the two women defendants? Right. So we have two arguments. If we can pierce the veil, then the jurisdictional objection for Ms. Arago evaporates, because there's a forum selection clause. But even if we can't, and even with respect to Ms. Osorio, our position is they are bound by the forum selection clause in the contract between Venus and Genoma. And I think it's interesting that even in the brief on appeal, the appellees have no response to that argument. They don't say why the line of cases we cited doesn't apply, because I think the answer is it clearly does. What the case law says is that if you are closely related to a corporate signatory, to a contract that has a forum selection clause, you are bound by that clause, and you have to litigate in New York as a result. So those are our two jurisdictional arguments, which the district court did not reach. Thank you. Thank you. Ms. Hamm. Good morning, Your Honors. May it please the court, my name is Nicole Hamm, and I'm with the law firm Smith, Kimbrough & Russell. I'm going to pick up on the jurisdictional arguments that the court was questioning Mr. Katz about. As an initial matter, it's our position that this appeal should not be ruled on at this time. A determination of the contract issue in the first action will be dispositive of the other claims and issues raised on this appeal. Additionally... So I'm clear, when you say the first action, the one that's... The first action, the 2014 action. Additionally, the Supreme Court's rulings in Hall and Galebound show that appellant jurisdiction does not exist here. Both cases rule that a final decision is one by which the district court disassociates itself with the case. No such disassociation has happened here. Instead, GENOMA brought this action against five defendants alleging two claims, the recovery of fraudulent transfers and veil piercing. Today, GENOMA is still litigating these two very same claims against three to five very same defendants. Additionally, Hall stands for the proposition that when multiple cases are consolidated, each constituent case must be examined separately to determine whether appellate jurisdiction exists. If this case, the one on appeal, was examined separately from the remaining claims and parties that were merged into the first action, a Rule 54B certification would be required, because this action presents more than one claim for relief and involves multiple parties. Accordingly, appellees request that the court not determine this issue until the first action is resolved. Additionally, I'd also like to pick up on the court's questioning concerning the in personam jurisdiction. GENOMA has already conceded that it has dropped its veil piercing claims against Rosario. In terms of Arego, they allege that they should pierce the corporate veil, even though she's not a signatory. Well, those are two separate numbers. So they allege that she should pierce the corporate veil. We don't believe that they've made allegations sufficient to pierce the corporate veil. In Florida law, in order to pierce the corporate veil, a party has to act in ways that are tantamount to fraud. GENOMA's complaint doesn't allege that Arego had any actions that were tantamount to fraud. Instead, they point the finger repeatedly at Mr. Caritero. They say that Mr. Caritero, in paragraph two of the proposed amendment complaint, was the one who orchestrated the fraudulent transfers. They said he was the one that negotiated the contract. That he actually testified that he negotiated the contract in his personal capacity and not in the capacity of Venus. They allege that Arego and Rosario didn't know about the contract. They weren't familiar with its terms. They make other allegations. And, indeed, at oral argument. What's the relevance as to whether they were aware that Arego and Rosario were aware of the contract? They were the sole, as I understand it, shareholders, directors, and officers of Venus, aren't they? They are, but they were involved in the telemarketing aspect of Venus' business. This involves the advertising side. Well, I mean, let's say that an employee of Venus signed a major contract on behalf of the company. Aren't the officers of the company bound by its terms? The company should be bound by its terms, but I don't believe the officers and directors would have, if they don't have the knowledge of the contract, they simply don't. There's no allegations that an inference could be made concerning that they even knew about the contract. In fact, Rosario, at her deposition, said she didn't even know that Venus had agreed to sell airtime to Genoma. And that's also in the proposed amended complaint at either paragraph 16 or 17. Your adversary, in its opening brief, as I read it, says that the district court can exercise jurisdiction because of a forum selection clause in the contract between Venus and Genoma. Well, they allege on, in addition to developers, they allege on two different grounds, which they actually pled themselves out of. So first of all, they allege that because the two women had an active role in the company, that they should be bound by the forum selection clause. However, their allegations also say that these women did little to no work as to both women. So I believe that's also in, I believe that's paragraphs 17 and 16 as well of the proposed amended complaint. So they can't have an active role if they're also pleading that they did little to no work. And this is something that they added not just in their initial complaint, but their proposed amended complaint. Additionally, the case law that they cite is far from settled in this circuit. Now, they cited this on appeal, but there have been decisions from both Judge Cote and Judge Crotty saying that the decisions that they've been citing, particularly Nano-Pierce, aren't settled law in the Second Circuit. Additionally, Nano-Pierce involves a situation where there was a CFO of a company who had to certify certain documents with the SEC. And they had to certify those documents under the federal law. And the person in the plaintiff in Nano-Pierce relied on those statements that were certified and signed by the CFO. And the court held that the CFO, in that instance, having certified those documents, was a signatory and closely related to dispute that issue, which was whether or not the shareholder relied on documents signed by the CFO. In this case, the women have not signed any documents relating to this dispute. There's no allegations that they have any ties with the state of New York. The Venus is a Florida company. They reside in Florida. There's no allegations that any of the alleged fraudulent transfers that took place, which, by the way, is their salary in the most part, which they're alleging, took place in Florida. And indeed, the state of New York isn't even mentioned in the first complaint or the amended complaint. There's literally no ties with New York such to subject them to the personal jurisdiction of these courts. Do your honors have any other questions? No. All right. Thank you. We'll rest on our papers. I just wanted to pick up on the last point on personal jurisdiction. They are the sole officers, sole directors, and sole shareholders of Venus. Now, the fact that we allege that they abdicated their responsibilities in those roles, I don't think should become a jurisdictional virtue and get them out of the reach of the Forum Selection Clause. I think if you're the president and vice president and you own the company, as a matter of law, you have to be closely related to the company. And you can't say, well, I don't really do a lot of work, or at least you allege I don't do a lot of work, so I shouldn't be subject to jurisdiction. That just seems a little too cute, to me at least. There are ties to New York. The contract, the January 2013 agreement, was negotiated at the Plaza Hotel in New York. So it's not as if the parties had no connection to New York and just put this Forum Selection Clause in there. It's in there, and that's actually alleged in their answer at length in the record. On the notion that we have to show conduct tantamount to fraud to pierce the corporate veil, when the courts say tantamount to fraud, they don't mean fraud in the sense of misrepresentations. In fact, there's a very good quote from a Florida appellate case called Turner Murphy, where it says, fraud as used in this sense, talking about veil piercing, connotes fraudulent conveyances, distributions, or other transfers designed to remove corporate assets from the reach of corporate creditors and may have nothing to do with material misrepresentations of fact intended to induce detrimental reliance. So when they say fraud for veil piercing, that's all they mean, doing bad things to frustrate your creditor. It doesn't have to be a lie or anything like that. And then the final point is appellate jurisdiction. Hall v. Hall expanded appellate jurisdiction. In this circuit, it used to be if two cases were consolidated and a judgment is entered in the consolidated action, you— In that case, weren't the actions consolidated? In which—in Hall? Yes, that was just a standard Rule 42 consolidation. But I find—I don't know how they can argue that Hall v. Hall defeats jurisdiction here. If anything, the case supports us to the extent it has any bearing here. If the Court has no further questions, I'll rest on my briefs. Thank you. Thank you. Thank you both for your arguments. The Court will reserve decision.